**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| YINGLI ENERGY (CHINA) COMPANY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>AMERICAN ALLIANCE FOR SOLAR MANUFACTURING,<br><br>Defendant-Intervenor. | Court No. 26-01169 |

**ORDER**

Upon consideration of the parties' 56.2 briefing, and upon all other papers and proceedings herein, the Court

**ORDERS** that the final results are sustained; and further

**ORDERS** that final judgment be entered in favor of the United States.

**SO ORDERED**

Dated:_______________, 2026
New York, New York

_______________________________________
Joseph A. Laroski, Jr., Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| YINGLI ENERGY (CHINA) COMPANY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>AMERICAN ALLIANCE FOR SOLAR MANUFACTURING,<br><br>Defendant-Intervenor. | Court No. 26-01169 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

TATE N. WALKER
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station

OF COUNSEL:
KARL MUELLER
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW

Washington, DC 20230

Washington, D.C., 20044
Tel: (202) 307-0163
Email: Tate.Walker@usdoj.gov

October 22, 2026

*Attorneys for Defendant*

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 .......... 2

I. The Administrative Determination under Review .......... 2

II. Issues Presented for Review .......... 2

STATEMENT OF FACTS .......... 2

I. Request for Administrative Review and Questionnaire Response .......... 2

II. Preliminary Results and Administrative Case Briefs .......... 4

III. Final Results .......... 6

SUMMARY OF ARGUMENT .......... 8

ARGUMENT .......... 9

I. Standard of Review .......... 9

II. Commerce's Selection of Yingli China as a Mandatory Respondent is Supported by Substantial Evidence and in Accordance with Law .......... 10

A. Legal Standard for Respondent Selection .......... 10

B. Commerce Lawfully Selected Yingli China as The Replacement Mandatory Respondent .......... 11

III. Commerce's Application of Adverse Facts Available in Its Calculation of Yingli China's Countervailing Duty Rate is Supported by Substantial Evidence and in Accordance with Law .......... 16

A. Legal Framework for Facts Available with An Adverse Inference .......... 16

B. Commerce Lawfully Used Adverse Facts Available in Its Calculations of Yingli China's Rate .......... 17

CONCLUSION .......... 23

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Altx, Inc. v. United States*,
370 F.3d 1108 (Fed. Cir. 2004) .......... 10

*Fine Furniture (Shanghai) Ltd. v. United States*,
748 F.3d 1365 (Fed. Cir. 2014) .......... 21

*Fujitsu Gen. Ltd. v. United States*,
88 F. 3d 1034 (Fed. Cir. 1996) .......... 10

*Huaiyin Foreign Trade Corp. v. United States*,
322 F.3d 1369 (Fed. Cir. 2003) .......... 12, 15

*KYD, Inc. v. United States*,
607 F.3d 760 (Fed. Cir. 2010) .......... 18, 20

*Mitsubishi Heavy Indus., Ltd. v. United States*,
275 F.3d 1056 (Fed. Cir. 2001) .......... 10

*Mueller Comercial De Mex. v. United States*,
753 F.3d 1227 (Fed. Cir. 2014) .......... 18, 19, 20, 23

*Nippon Steel Corp. v. United States*,
337 F.3d 1373 (Fed. Cir. 2003) .......... 16, 17

*PAM S.p.A. v. United States*,
463 F.3d 1345 (Fed. Cir. 2006) .......... 15

*Sea–Land Serv., Inc. v. United States*,
735 F. Supp. 1059 (Ct. Int'l. Trade 1990) .......... 15

*Shanxi Hairui Trade Co., Ltd. v. United States*,
39 F.4th 1357 (Fed. Cir. 2022) .......... 22

*Sunpreme Inc. v. United States*,
946 F.3d 1300 (Fed. Cir. 2020) .......... 10

*Tung Mung Dev. Co. v. United States*,
25 C.I.T. 752 (2001) .......... 16

*United States v. Eurodif S.A.*,
555 U.S. 305 (2009) .......... 10

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013) .......................................................................................11

*YC Rubber Co. (N.A.) LLC v. United States*,
No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) ................................................11

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)........................................................................................ 10

19 U.S.C. § 1675(a) ........................................................................................................... 2

19 U.S.C. § 1675(a)(1)...................................................................................................... 3, 7

19 U.S.C. § 1677e(a)(1)-(2) ............................................................................................. 16

19 U.S.C. § 1677e(b) ...................................................................................................... 17, 18

19 U.S.C § 1677e(a).......................................................................................................... 5, 23

19 U.S.C. § 1677f-1 ......................................................................................................... 12

19 U.S.C. § 1677f-1(c)(1) ................................................................................................. 10

19 U.S.C. § 1677f-1(c)(2) ...............................................................................................10, 11

19 U.S.C. § 1677f-1(e)(1) ................................................................................................. 12

19 U.S.C. § 1677f-1(e)(2) ................................................................................................... 3

19 U.S.C. § 1677f-1(e)(2)(A)(ii).......................................................................................... 3

**Regulations**

19 C.F.R. § 351.213(b)....................................................................................................... 2

19 C.F.R. § 351.213(f) ......................................................................................................... 3

19 C.F.R. § 351.525(c)...................................................................................................... 5, 6

19 C.F.R. § 351.525(c)(1) .................................................................................................... 8

**Administrative Cases**

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrati*ve Review,
88 Fed. Reg (Dep't of Commerce Dec. 1, 2023) ................................................................ 2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrati*ve Review; 2022,
91 Fed. Reg. 3,419 (Dep't of Commerce Jan. 27, 2026) ........................................................... 2

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
89 Fed. Reg. 8,641 (Feb. 8, 2024) ......................................................................................... 3

**Other Authorities**

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. 1 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040.................................... 17

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| YINGLI ENERGY (CHINA) COMPANY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>AMERICAN ALLIANCE FOR SOLAR MANUFACTURING,<br><br>Defendant-Intervenor. | Court No. 26-01169 |

**DEFENDANT'S RESPONSE**
**PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully responds to the motion for judgment on the agency record (Yingli China Br., ECF No. 21) filed by plaintiff Yingli Energy (China) Company Limited (Yingli China) on August 13, 2026. Yingli China challenges the final results of the Department of Commerce's administrative review of the countervailing duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules (solar cells) from the People's Republic of China. As demonstrated below, Commerce's determination is supported by substantial evidence and in accordance with law. Accordingly, we respectfully request that the Court sustain Commerce's final determination and deny Yingli China's motion for judgment on the agency record.

## STATEMENT PURSUANT TO RULE 56.2

### I. Administrative Determination under Review

The administrative determination under review is *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review*; 2022, 91 Fed. Reg. 3,419 (Dep't of Commerce Jan. 27, 2026) (final results) (P.R. 192), and the accompanying Issues and Decision Memorandum (IDM) (P.R. 187).

### II. Issues Presented for Review

1. Whether Commerce lawfully replaced Changzhou Zhaojing Light Energy Co., Ltd. (Light Energy) with Yingli China as the mandatory respondent.

2. Whether Commerce lawfully applied a rate, based on adverse facts available, in determining Yingli China's countervailing duty rate.

## STATEMENT OF FACTS

### I. Request for Administrative Review and Questionnaire Responses

Commerce does not automatically conduct administrative reviews of antidumping duty orders. Instead, reviews must be requested pursuant to 19 U.S.C. § 1675(a), and in accordance with 19 C.F.R. § 351.213(b). The Tariff Act of 1930, as amended, provides interested parties with the opportunity to request periodic reviews of antidumping and countervailing duty orders once every twelve months. 19 U.S.C. § 1675(a). On December 1, 2023, Commerce published an opportunity to request administrative reviews of the duty orders covering solar cells from China. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 88 Fed. Reg 83,919 (Dep't of Commerce Dec. 1, 2023). In response to requests from numerous interested parties, *see, e.g.,* Petitioner's American

Alliance for Solar Manufacturing (the Alliance), Request for Administrative Review (Dec. 29, 2023) (P.R. 2)[1] at 6, Commerce initiated an administrative review of the countervailing duty order with respect to 77 companies. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 8,641, 8,466 (Feb. 8, 2024) (P.R. 15) (Initiation Notice) at 4. Yingli China, but *not* Light Energy, was listed as a company subject to the administrative review.

Consistent with 19 U.S.C. § 1677f-1(e)(2) and 19 C.F.R. § 351.213(f), Commerce limited its examination to a reasonable number of companies. *See Administrative Review of the Countervailing Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Respondent Selection* (April 16, 2024) (P.R. 42, C.R. 6) (Respondent Selection Memorandum) at 4. Consequently, Commerce determined to select the exporters and producers accounting for the largest volume of subject merchandise from the exporting country that it could reasonably examine, in accordance with 19 U.S.C. § 1677f-1(e)(2)(A)(ii). *Id.* at 5-8. Commerce stated that "respondent selection analysis is limited to companies named in the Initiation Notice" per 19 C.F.R. § 351.213(f), as Commerce only conducts a review where a request for review has been received under 19 U.S.C. § 1675(a)(1).

Commerce selected Jiangsu High Hope International Group Corporation and Light Energy for "individual examination {representing} the two largest companies by import value" and listed those import values by company. *Id.* at 5, 7.

As a mandatory respondent, Light Energy responded to various relevant questionnaires from Commerce. Light Energy reported that it "did not have direct export sales to the United

[1] Record citations of P.R./C.R. designate citation to the filed administrative record index filed on May 5, 2026. ECF No. 18.

States in the {period of review}, but it sold the subject merchandise to Yingli China, who then exported to the United States. We will *forward* the questionnaire to *Yingli China*." Light Energy's Section III Identifying Affiliates Questionnaire Response (Light Energy's Affiliate Resp.) (May 13, 2024) (C.R. 7, P.R. 69) at 2 (emphasis added); Light Energy's Section III Questionnaire Response (June 20, 2024) (C.R. 11, P.R. 87) at 3. Yingli responded to the Section III Questionnaire, reporting that Yingli "was a trading company without any production activity during the {period of review}," and that it simply "exports subject merchandise produced by one producer." Yingli's Section III Questionnaire Response (Yingli's China IQR) (June 20, 2024) (C.R. 20, P.R. 88) at 1, 4. This relationship is illustrated below.

**Yangzhou Jinghua** (noncooperative manufacturer)

↓

**Light Energy** (middleman supplier/seller in China)

↓

**Yingli China** (purchaser/exporter to the United States)

Light Energy requested information from Yangzhou Jinghua New Energy Technology Co., Ltd. (Yangzhou Jinghua or unaffiliated producer/manufacturer) in order to comply with Commerce's questionnaire, however, it reported difficulties in securing the information needed. Notice of Reporting Difficulties (Notice of Difficulty) (June 20, 2024) (C.R. 37, P.R. 89). Ultimately, Yangzhou Jinghua refused to comply with Commerce's requests for information regarding subsidies received by Yangzhou Jinghua in the questionnaire. *Id.* at Attachment 1.

## II. Preliminary Results and Administrative Case Briefs

On April 7, 2025, Commerce published the preliminary results and invited interested parties to comment. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into*

*Modules, from the People's Republic of China*: *Preliminary Results of the Countervailing Duty Administrative Review, and Rescission in Part; 2022* (preliminary results) (April 21, 2025) (P.R. 140), and accompanying Preliminary Results Memorandum (PDM) (April 7, 2025) (P.R. 134).

In the preliminary results, Commerce used factual information from various questionnaire responses to determine a weighted average dumping margin for the two mandatory respondents. *See* PDM at 12-13. Regarding Light Energy's unaffiliated producer from which information was requested and not received, Commerce determined that it was necessary to rely upon facts otherwise available as a substitute for the missing information. *Id.* While Light Energy timely responded to all questionnaires, on behalf of itself and its unaffiliated exporter, Yingli China, Light Energy had not been able to provide responses on behalf of its unaffiliated producer, Yangzhou Jinghua. *Id.* at 3; Notice of Difficulty.

For the preliminary results, Commerce applied adverse facts available to Yangzhou Jinghua in accordance with 19 U.S.C § 1677e(a) because Yangzhou Jinghua failed to cooperate to the best of its ability. *Id.* at 12, 26; Notice of Difficulty at Attachment 1. Because Yangzhou Jinghua was Light Energy's sole producer, Commerce cumulated Yangzhou Jinghua's adverse facts available rate with the subsidy rate calculated for Light Energy, in accordance with 19 C.F.R. § 351.525(c), which provides that benefits from subsidies provided to a trading company which exports subject merchandise shall be cumulated with benefits provided to the firm producing the subject merchandise that is sold through the trading company. *Id.* at 12. This resulted in Commerce calculating a preliminary countervailing duty rate of 125.34 percent for Light Energy. *See* Preliminary Results at 2.

After the preliminary results, Light Energy argued that Commerce should rescind its review of the company because (1) no interested party had requested a review for Light Energy;

(2) Commerce had not named Light Energy in the initiation notice; and that 3) it was neither a producer nor an exporter of subject merchandise. *See generally* Light Energy's Case Brief (May 12, 2025) (P.R 151); IDM at 7, 9-11.

The Alliance argued that even if Commerce never specifically initiated a review of Light Energy, that "the Department initiated a review concerning Yingli China, an integral part of Light Energy's export operations" and, thus, there was a basis not to rescind the review of Light Energy. Alliance's Rebuttal Brief (May 19, 2025) (C.R. 56, P.R 157) at 5. The Alliance argued that Yingli China "exports {} Light Energy's sales to the United States." *Id.* The Alliance also argued that "the responses from Yingli China, Light Energy, and the non-compliant manufacturer, Yanghzou Jinghua, would be identical if the Department had issued the initial questionnaire directly to Yingli China." *Id.* at 6. Thus, the Alliance argued that "the review process would yield the same results regardless of the direct recipient of the questionnaire." *Id.*

## III. Final Results

In the final results, Commerce acknowledged that it had erroneously selected Light Energy as a mandatory respondent. IDM at 10. Commerce explained that the selection error had occurred because Commerce's practice was to select mandatory respondents based on the "manufacturer field" contained within U.S. Customs and Border Patrol (CBP) data, and that field had listed Light Energy.[2] *Id.*; *see* CBP Data (March 14, 2024) (C.R. 2-3, P.R. 37). This was despite Commerce stating that it would not select a company as a mandatory respondent unless it had initiated a review of that particular company, as required by the statute. Respondent

[2] Per CBP instructions, an "invoicing party" can also be listed in the manufacturer field. It appears that that is why Light Energy may have been listed in the field by Yingli China when it filled out CBP paperwork.

Selection Memorandum at 5; 19 U.S.C. § 1675(a)(1). Thus, for the final results, Commerce rescinded its review of Light Energy. IDM at 7, 9-11.

As a replacement mandatory respondent, Commerce selected Yingli China, Light Energy's sole exporter. Commerce found that in contrast to Light Energy, Commerce had initiated a review of Yingli China's exports. IDM at 10; *see* Initiation Notice at 4. Further, the data submitted by Light Energy showed that all of the exports attributed to Light Energy in the CBP data were exported to the United States by Yingli China, and that Light Energy supplied to Yingli China all of subject merchandise included in these exports. IDM at 10; *see* Light Energy's Affiliate Resp. at 2. Commerce found that the exports produced by Yangzhou Jinghua, purchased by Light Energy, and then exported to the United States by Yingli China represented "one of the largest percentages of shipments of subject merchandise to the United States." *Id.* Commerce explained that "because both companies are involved in the same exports," namely the large percentages of shipments recorded in the CBP data, it was "appropriate to replace Light Energy as a mandatory respondent with Yingli China." *Id.* Commerce also noted that Yingli China had responded to various Commerce questionnaires, and thus Commerce had the necessary information to calculate a subsidy rate for Yingli China. *Id.* at 10, 22 ("Commerce received an initial questionnaire response from Yingli Energy (China) Company Limited") (citing Yingli's China's IQR).

Commerce continued to find that the use of adverse facts available was necessary due to the unaffiliated producer's missing cost information. In determining how to calculate a countervailing duty rate for Yingli China, Commerce found that the noncooperating producer, Yangzhou Jinghua, was the *sole* producer of the exports attributed to Light Energy in the CBP data and exported by Yingli China. IDM at 11. Commerce determined that this exclusive

business relationship put both Yingli China and Light Energy in a position to induce Yangzhou Jinghua to cooperate, but that they failed to do so. *Id.* For this reason, Commerce determined that it was appropriate to apply an adverse inference in calculating a duty rate for Yingli China. *Id.* However, Commerce determined that because Yingli China and Light Energy had fully cooperated with the agency's requests for information, apart from failing to induce cooperation from their unaffiliated producer, it would be unreasonable to cumulate Yangzhou Jinghua's adverse facts available rate with their subsidy rates. IDM at 11. For the final results, Commerce determined that assigning the higher cumulated duty rates, combining the calculated rate for Yingli China and the AFA rate for Yingli China's uncooperative producer, would "disincentivize cooperation." IDM at 11. Commerce added together the rates it calculated for the various countervailable programs that it found that the noncooperative manufacturer received. When Commerce ascribed those programs to Yingli, per 19 C.F.R. § 351.525(c)(1), Commerce calculated a unique rate to Yingli, accounting for its cooperation, that did not include all the same programs that Commerce initially used to calculate the subsidy rate for Light Energy. *Id.* Accordingly, for the final results, instead of the higher cumulated rate[3] from the PDM, Commerce assigned Yingli China a revised rate of 117.41 percent.

## SUMMARY OF ARGUMENT

Commerce's decisions to replace Light Energy with Yingli China as a mandatory respondent and apply adverse facts available in determining Yingli China's countervailing duty rate was based on substantial evidence and in accordance with law.

[3] The rate in the *Preliminary Results* for Light Energy was 125.34 percent. *See Preliminary Results*.

Yingli China was listed in the *Federal Register* notice initiating the administrative review. When Commerce selected Light Energy as a mandatory respondent, Yingli China was on notice that all of the subject merchandise it exported during the period of review was under review. Yingli China was the sole exporter for Light Energy, and these exports constituted the largest percentage of shipments of solar cells to the United States during the period of review. Further, Yingli China provided questionnaire responses to Commerce, through its supplier Light Energy, and thereby meaningfully participated in the review. Indeed, Yingli China provided information and data to Commerce as if Commerce had selected it as a mandatory respondent at the start of the review, rather than Light Energy. Accordingly, Commerce reasonably replaced Light Energy with Yingli China's sole exporter, as a mandatory respondent in this review.

Additionally, Commerce reasonably calculated a countervailing duty rate for Yingli China based on adverse facts available. The Federal Circuit has affirmed Commerce's practice of applying adverse facts available to a noncooperative party, even when this has collateral effects on a cooperating party. Here, Commerce reasonably balanced the goals of inducing foreign exporters and producers to cooperate in future proceedings and taking account of the fact that Yingli China (and Light Energy) had cooperated during the review, except they failed to provide information from their unaffiliated producer. Further, by not cumulating the uncooperative party's adverse rate with that of Yingli China, Commerce's application of an adverse inference was narrowly tailored.

## ARGUMENT

### I. Standard of Review

Commerce's determinations, findings, or conclusions in an antidumping duty proceeding are upheld unless "unsupported by substantial evidence on the record, or otherwise not in

accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Fujitsu Gen. Ltd. v. United States*, 88 F. 3d 1034, 1038 (Fed. Cir. 1996). "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). A party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1060 (Fed. Cir. 2001). Substantial evidence is "more than a mere scintilla" and is evidence that "a reasonable mind might" accept as adequate. *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020) (citation & internal quotation marks omitted). The agency's findings may be supported by substantial evidence even if the possibility of drawing two inconsistent conclusions exists. *Id.* at 1308-09. The Court must sustain the determination if it is "reasonable and supported by the record as a whole, even if some evidence detracts from {Commerce's} conclusion." *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004).

## II. Commerce's Selection of Yingli China as a Mandatory Respondent is Supported by Substantial Evidence and in Accordance with Law

### A. Legal Standard for Respondent Selection

Under 19 U.S.C. § 1677f-1(c)(1), Commerce must individually examine and assign a company-specific dumping margin to every respondent participating in an antidumping duty administrative review. However, where a large number of companies involved in an administrative review makes it impracticable for Commerce to examine all known producers and exporters of the subject merchandise, Commerce may limit its review to a "reasonable number" of respondents. 19 U.S.C. § 1677f-1(c)(2).

Specifically, Commerce has the discretion to review a "reasonable number" of companies by examining either: (1) a statistically valid sample of the exporters or producers; or (2)

exporters or producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined. 19 U.S.C. § 1677f-1(c)(2). *See YC Rubber Co. (N.A.) LLC v. United States*, No. 2021-1489, 2022 WL 3711377, at *3 (Fed. Cir. Aug. 29, 2022) (discussing how Commerce may reduce the number of respondents it examines when "the large number makes separate review impracticable."); *Yangzhou Bestpak Gifts & Crafts Co. v. United States, 71*6 F.3d 1370, 1372–73 (Fed. Cir. 2013) (explaining that "Commerce often limits mandatory respondents to those with the largest volume of exports and/or shipments of subject merchandise during the period of investigation, or a statistically valid sample among all known respondents.").

The statute is silent as to what stage of the administrative proceeding the selection must take place. Commerce must select either a sample of exporters, producer or types of product, or instead choose, as it did here, the "exporters and producers {who} account{} for the largest volume of the subject merchandise from the exporting county." 19 U.S.C. § 1677-f-1(c)(2). Thus, Commerce has the discretion to determine what methodology to employ in regard to determining an applicable dumping margin for a respondent. *See generally* Respondent Selection Memorandum at 4-5.

**B. Commerce Lawfully Selected Yingli China as The Replacement Mandatory Respondent**

Commerce lawfully selected Yingli China as a mandatory respondent in lieu of Light Energy, and the company had the opportunity to meaningfully participate in the review by submitting various questionnaire responses. *See* Yingli's China's IQR. The Alliance requested review of Yingli China in response to Commerce's opportunity to request an administrative review, Commerce included Yingli China in the Initiation Notice, and Yingli China was thus subject to the administrative review. Initiation Notice at 4; Alliance's Request for

Administrative Review at 2, 6 (listing Yingli China as an entity that "produced or exported" subject merchandise). Thus, Yingli China, a large volume exporter, had notice that Commerce could individually examine its entries in this proceeding. Respondent Selection Memorandum at 5 ("This respondent selection analysis is limited to companies named in the Initiation Notice" and respondents selected from "the two largest exporters/producers of subject merchandise").

Yingli China argues that this replacement of mandatory respondent was inappropriate, citing to both 19 U.S.C. § 1677f-1, and Commerce's practice of issuing new questionnaire responses to when Commerce replaces a mandatory respondent with a replacement mandatory respondent. Yingli's China's Br. at 5-6 (citations omitted). Yingli China also argues that it did not have "any opportunity to submit any information of any kind as a mandatory respondent." Yingli China's Br. at 5. In essence, Yingli contests whether Commerce "'individually investigate{d}' a respondent and reasonably calculates a countervailing duty margin for that respondent based on its own data," as required by 19 U.S.C. § 1677f-1(e)(1). *Id.* at 6.

However, there is no genuine question of fact that Yingli China meaningfully participated in this review by providing responses to Commerce's questionnaires through Light Energy, its sole supplier, and that functionally it was the mandatory respondent throughout the proceedings, even predating the final results. A party will be found to have adequate notice and the "opportunity for meaningful participation" when it can determine from an initiation notice "whether particular entries in which it has an interest may be affected by the administrative review." *See Huaiyin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1376 (Fed. Cir. 2003) (internal citations omitted).

Here, Yingli China had adequate notice that its exports were being individually examined when 1) Commerce included Yingli China in its Initiation Notice, and 2) Commerce selected

Light Energy, whose sole exporter was Yingli China, as a mandatory respondent. Significantly, while being aware from the early stage of the proceeding that Commerce is examining its entries and even providing through Light Energy information requested by Commerce with respect to such entries, Yingli China did not inform Commerce that Yingli China, the exporter of entries at issue, rather than Light Energy should have been selected as the appropriate mandatory respondent.

Yingli China argues that it was never "individually investigated" because Commerce did not issue questionnaires to it directly. Yingli China's Br. at 6. Yingli China acknowledges that it provided a questionnaire response to Commerce through Light Energy, but it asserts that this is "not the same as" issuing a questionnaire to Yingli China directly. *Id.* at 7-8. This argument overlooks that, instead of providing information to Commerce through Light Energy, Yingli China could have informed Commerce at the early stage of the proceeding that Light Energy is not the proper mandatory respondent and that in selecting the largest exporters for individual examination Commerce should have selected Yingli China, the sole exporter of entries at issue. The record demonstrates that Light Energy served as the trading company, and Yingli China was the sole exporter for the same set of solar cell products that were under examination in this administrative review. This close relationship required Yingli China, as the exporter of the entries at issue, to submit all the required information as if it was under individual examination as Commerce was examining Yingli China's entries, albeit Commerce initially attributed these entries to Light Energy, because Yingli China's importer likely listed Light Energy in the manufacturing field when submitting CBP paperwork for Yingli China's entries. *See* Light Energy QR at 4; Yingli China's IQR (responding fully to the section of Commerce's

questionnaire requesting information regarding the subsidies received by Yingli China); Respondent Selection Memorandum; CBP Data at Attachment 1 (C.R. 3).

In essence, Light Energy required data from Yingli China to answer Commerce's questionnaire and forwarded the proffered questions directly to Yingli China to respond to. Light Energy QR at 4. Yingli China thus then responded to Commerce with the questionnaire responses through Light Energy. Yingli's China IQR. There can be no serious debate then that Yingli China was individually examined, having an opportunity to respond directly to Commerce's questionnaires, even if routed through Light Energy.

Commerce inquired about Yingli China's subsidy information via the Section III Questionnaire which was forwarded to Yingli China by Light Energy. *Compare* Yingli China's IQR *with* Light Energy's Section III Questionnaire Response; *see* PDM at 3. Importantly, Commerce's practice is not to ignore the entire supply chain and solely focus on the entity individually examine when calculated countervailing duty rate. In its questionnaire to Light Energy, Commerce explained that "{i}n addition to providing a response to this questionnaire regarding your own company, we require responses from certain affiliated companies or companies involved in your production or sales of subject merchandise." Light Energy's Affiliate Resp. at 1. Commerce highlighted Yingli China's role in the supply chain as one of the largest percentages of shipments of solar cells to the United States, as supported by the CBP data on the record of this proceeding. *See* IDM at 10; Respondent Selection Memorandum at 7 (listing the significant, BPI import values by company). Additionally, Yingli China did not comment on the Respondent Selection Memorandum or CBP data and, thus, did not avail itself of an opportunity to alert Commerce regarding any potential to misidentify the largest exporters

based on CBP data or argue that Commerce should have selected Yingli China rather than Light Energy as the mandatory respondent.

When Commerce initiated its review of Yingli China and listed the company in its initiation notice, Commerce provided Yingli China was on notice that "entries in which it has an interest may be affected by the administrative review." *Huaiyin* at 1376. The knowledge that these entries "may be affected" became a certainty that they *would* be affected when Commerce selected Light Energy as a mandatory respondent. *Id.* This is because "{a}ll of Yingli China's exports of subject merchandise to the United States were supplied by Light Energy." IDM at 10. Yingli China was fully aware that its exports of solar cells were subject to review because Yingli China was the exporter for all of exports of solar cells that the CBP data attributed to Light Energy.

Regardless, even had Commerce selected Yingli China as a mandatory respondent at the beginning of the review, Yingli China still would have to provide the information to Commerce reflecting its role as the exporter. Consequently, by not explicitly naming Yingli China as the mandatory respondent at the outset of the review, Commerce committed, at most, harmless error. IDM at 9-10. Yingli China does not identify any specific, tangible harm as a result of not having been selected as a mandatory respondent from the start of the administrative review. This lack of prejudice alone warrants rejection of Yingli China's claims. *See Sea–Land Serv., Inc. v. United States*, 735 F. Supp. 1059, 1063 (Ct. Int'l. Trade 1990) (it is "well settled that courts will not set aside agency action for procedural errors unless the errors 'were prejudicial to the party seeking to have the action declared invalid'"), *aff'd and adopted*, 923 F.2d 838 (Fed. Cir. 1991); *PAM S.p.A. v. United States*, 463 F.3d 1345, 1346, 1349 (Fed. Cir. 2006) (explaining that the plaintiff

had to demonstrate "substantial prejudice" as a result of Commerce's procedural error to reverse the agency's determination).

Yingli China was able to submit information through its supplier Light Energy during the review because it was the exporter of the entries under review. Because Yingli China was provided adequate notice of being subject to this review and was able to meaningfully participate in it, this Court should find that Commerce's selection of Yingli China as a mandatory respondent was supported by substantial evidence and in accordance with law.

## III. Commerce's Application of Adverse Facts Available in Its Calculation of Yingli China's Countervailing Duty Rate is Supported by Substantial Evidence and In Accordance with Law

### A. Legal Framework for Facts Available with An Adverse Inference

Commerce shall use facts otherwise available to reach its final determination when "necessary information is not available on the record," a party "withholds information that has been requested," fails to provide the information timely or in the manner requested, "significantly impedes a proceeding," or provides information Commerce is unable to verify. 19 U.S.C. § 1677e(a)(1)-(2). When Commerce's request is clear and relates to issues in a proceeding, a respondent has a "statutory obligation to prepare an accurate and complete record in response to questions plainly asked by Commerce." *Tung Mung Dev. Co. v. United States*, 25 C.I.T. 752, 788 (2001). "The mere failure of a respondent to furnish requested information—for any reason—requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003).

Further, if Commerce finds that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," then Commerce "may use an

inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b). When determining whether a respondent has complied to the "best of its ability," Commerce "assess{es} whether {a} respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel*, 337 F.3d at 1382. Adverse inferences are not warranted "merely from a failure to respond," but rather in instances when Commerce reasonably expected that "more forthcoming responses should have been made." *Id*. at 1383. Further, the standard requires that importers "conduct prompt, careful, and comprehensive investigations of all relevant records that refer or relate to the imports in question to the full extent of the importers' ability to do so." *Id*. at 1382.

The purpose of the adverse facts available provision is "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. 1 (1994) (SAA), at 870 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040, 4199. When applying an adverse inference, Commerce also considers the extent to which a party may benefit from its own lack of cooperation. *See Nippon Steel*, 337 F.3d at 1382-83.

### B. Commerce Lawfully Used Adverse Facts Available in Its Calculation of Yingli China's Rate

Commerce reasonably used adverse facts available rate in its calculation of Yingli China's countervailing duty rate. Yingli China's sole producer failed to cooperate to the best of its ability in responding to Commerce's request for information by not providing Commerce with the subsidy information that Commerce's required to calculate Yingli China's margin. IDM at 10-11. In particular, Commerce found that the sole and exclusive manufacturer for Yingli China refused to cooperate and did not respond to any of its questionnaires that were necessary as a foreign manufacturer of subject merchandise. Commerce also found that the manufacturer failed

to cooperate to the best of its ability within the meaning of 19 U.S.C. § 1677e(b) by not responding to Commerce's repeated requests for information. Further, Yingli China did not act to the best of its ability by sourcing subject merchandise from producers that refused to cooperate with Commerce's requests for information and by failing to induce that exclusive manufacturer to report its data. IDM at 10-11; PDM at 3, 12.

Commerce's decision to apply an adverse inference is supported by substantial evidence and in accordance with law. The Federal Circuit has held that it is reasonable for Commerce to allow the effect of an adverse facts available rate of a manufacturer to trickle down to the cooperating company, when that company is in a position to induce a noncooperating company to provide complete and accurate information but has failed to do so. *See Mueller Comercial De Mex. v. United States*, 753 F.3d 1227, 1233 (Fed. Cir. 2014); *see also KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010).

Here, Yingli China *solely* exported the merchandise produced by the noncooperating company, Yangzhou Jinghua. Yingli China's IQR; IDM at 10-11. This is precisely the kind of close business relationship that the Federal Circuit noted in *Mueller* could be used to induce cooperation. *Mueller*, 753 F.3d at 1235. This significant amount of business demonstrates the ability to coerce cooperation from a manufacturer who would like to supply such a large enterprise with goods and should be willing to cooperate to keep such a lucrative relationship in place.

The Federal Circuit in *Mueller* squarely addressed the question of when it is reasonable to hold a cooperating party responsible for inducing cooperation from a noncooperating party. *Mueller* involved an antidumping duty review of certain steel pipe that had been produced by Ternium and exported to the United States by Mueller, its unaffiliated exporter. *Id*. at 1229.

Mueller fully cooperated during the review, but Ternium decided not to participate in the proceeding. *Id*. at 1229-1230. The Federal Circuit explained that it was reasonable for Commerce to consider whether the cooperating party has a business relationship that would allow it to induce cooperation from the noncooperating party. *Id.* at 1235. Specifically, because Mueller exported steel pipe produced by Ternium, the Federal Circuit noted that Mueller "could potentially have refused to do business with Ternium in the future as a tactic to force Ternium to cooperate." *Id.* The Court explained that "if Mueller and other entities were not willing to export goods produced by Ternium, this would potentially induce Ternium to cooperate." *Id.*

The same logic follows for Yingli China's relationship with its uncooperative producer. Yingli China chose to buy all of its subject merchandise from the one producer and purchased large volumes, and thus could have induced cooperation and should have anticipated needing that producer's cooperation as an initiated upon entity who exported a large quantity of the total subject merchandise imported into the United States. Yingli China's IQR at 7 ("All the export of subject merchandise to the United States were produced by the above-mentioned unaffiliated company"); Respondent Selection Memo at 6; IDM at 9.

In *Mueller,* while remanding the case for other reasons, the Federal Circuit underscored that the remand decision did not "bar Commerce from drawing adverse inferences against a non-cooperating party" even if the adverse inferences have "collateral consequences" for a cooperating party. 753 F.3d at 1236. The court explained that even though Commerce should prioritize accuracy in recalculating the rate on remand, its decision did not preclude Commerce from calculating a rate that also addressed the agency's policy concerns, "namely, its desire to encourage Mueller to induce Ternium's cooperation and Commerce's concern that calculating too

low a rate for Mueller might allow Ternium to evade its own dumping duty by channeling sales through Mueller." *Id.*

Similarly, in *KYD*, the Federal Circuit held that the importers are in a position to induce exporters to cooperate in Commerce's proceedings either "directly" or "indirectly, by leaving uncooperative exporters without importing partners who are willing to deal in their products." 607 F.3d at 768. Moreover, in both *KYD* and *Mueller*, the court highlighted the possibility that if the exporter were assigned a favorable duty rate regardless of the producer's noncooperation, the noncooperative party could easily evade adverse facts available rates. *Mueller,* 753 F.3d at 1235 ("as Commerce recognized, there is the possibility that Ternium could evade its own AFA {adverse facts available} rate of 48.33 percent by exporting its goods through Mueller if Mueller were assigned a favorable dumping rate."); *KYD*, 607 F.3d at 768 ("KYD's argument would allow an uncooperative foreign exporter to avoid the adverse inferences permitted by statute simply by selecting an unrelated importer, resulting in easy evasion of the means Congress intended for Commerce to use to induce cooperation with its antidumping investigations.").

For the same reasons enumerated by the Court in *Mueller* and *KYD*, Commerce reasonably relied upon a base adverse facts available rate from the uncooperative producer in determining Yingli China's countervailing duty rate as Commerce found that both Yingli and Light Energy failed to exert necessary pressure on the uncooperative producer. IDM at 11. Assigning Yingli China a countervailing duty rate without applying adverse facts available would create an incentive for producers to evade duties by exporting goods through an unaffiliated exporter and then refusing to cooperate.

In this case, Commerce did precisely what the Federal Circuit instructed the agency to do on remand in *Mueller*. 753 F.3d at 1236. Commerce balanced the goal of calculating an

accurate rate, inducing cooperation in future proceedings, and taking account of the fact that Yingli China (and Light Energy) had otherwise cooperated during the review. Specifically, the agency calculated a rate based on adverse facts available but did not cumulate Yangzhou Jinghua's adverse facts available rate with that of Yingli China. IDM at 11.[4] Consequently, Commerce's determination to apply adverse facts available in its determination of Yingli China's countervailing duty rate was in accordance with law and supported by substantial evidence.

Yingli China argues that it should not be held responsible for Yangzhou Jinghua's lack of cooperation because Commerce never requested Yangzhou Jinghua's information from Yingli China directly, the way it did from Light Energy. Yingli China's Br. at 10. This argument is unavailing. Yingli China did not need Commerce to send it a questionnaire directly to be aware that the agency would need information from Yangzhou Jinghua to calculate a countervailing duty rate for its exports.[5] When Light Energy was selected as a mandatory respondent, Yingli China was on notice that *all* of its exports were subject to review. This is true because Yingli China was Light Energy's only exporter, and Light Energy was Yingli China's only supplier. IDM at 10. Similarly, Yingli China was also aware that Yangzhou Jinghua was the sole producer of these exports. *See* Yingli China's IQR at 4.

---

[4] Commerce may use an adverse inference, even if doing so may have collateral consequences for a cooperating party stemming even from circumstances beyond their immediate control like who they choose to do business with. *See Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014) ("{c}ooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions," but "this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.").

[5] Regardless, Commerce's questionnaire was forwarded to Yingli and in that questionnaire, it cleared stated that "{a} failure on the part of any such companies {companies involved in the sale or production of subject merchandise} to provide a response to this questionnaire may *adversely affect* your own results in this review." Light Energy's Affiliate Resp. at 1-2 (emphasis added); *see* Yingli China's IQR.

Had Commerce been aware at the outset of the proceeding of the relevant facts surrounding the relationship of the three entities, namely that Light Energy was the trading company, rather than producer of merchandise, that Yangzhou Jinghua produced and Yingli China exported, which appeared in CBP data under Light Energy's name, Commerce could have selected Yingli China as the mandatory respondent. However, Commerce was unaware of the details of the relationship at the onset and Yingli China, Light Energy and Yangzhou Jinghua, the parties with the firsthand knowledge of their business relationship, made no effort to clarify or correct Commerce's misunderstanding regarding respondent selection until the case briefs. *See* Yingli China's IQR at 1 (reporting it had never been a past mandatory respondent); Light Energy's Section III Questionnaire Response at 1 (same). Yingli China was aware of these business relationships between itself, Light Energy and Yangzhou Jinghua, and the impact they could have on the proceeding *before* Commerce was. This is similar to Federal Circuit's finding that it was reasonable to attribute an adverse facts available rate due to a failure to cooperate from a supplier to a cooperative respondent "because of their significant supplier-customer relationship" even when the adverse facts available rate was partially based on fraud on solely the part of the uncooperative supplier. *Shanxi Hairui Trade Co., Ltd. v. United States*, 39 F.4th 1357, 1363 (Fed. Cir. 2022). To find this, the Federal Circuit looked to the sales data and that the uncooperative supplier accounted for a "significant portion" of the respondent sales. *Id.* Because Commerce has this same evidence on the record with *all* the respondent's sales stemming from the one producer, Commerce reasonably determined that Yingli China was in a position to induce Yangzhou Jinghua to cooperate with the agency's requests for information and failed to do so. IDM at 11.

Yingli China further contends that section 1677e only allows Commerce to apply adverse facts available where an interested party withholds or fails to provide information, and that Yingli China did not do so because Commerce never requested Yangzhou Jinghua's information from Yingli China. Yingli China's Br. at 10. This argument elides the fact that Yingli China was aware that its exported solar cells, produced by Yangzhou Jinghua, were subject to this review, that Commerce would need information from the producer of those exports to calculate an accurate rate and, in fact, provided information in response to Commerce's questionnaires through its sole supplier Light Energy.

Therefore, Commerce reasonably determined that, as the sole exporter of Yangzhou Jinghua's entries at issue, Yingli China was in a position to induce cooperation from Yangzhou Jinghua, it but did not do so. IDM at 11. The fact that Yangzhou Jinghua's adverse facts available rate had a collateral effect on Yingli China's countervailing duty rate does not make the rate unlawful. *Mueller*, 753 F.3d at 1236. Moreover, Commerce took account of Yingli China's cooperation when it decided not to cumulate Yangzhou Jinghua's rate with that of Yingli China, which resulted in a lower rate. Consequently, this Court should find that Commerce's calculation of Yingli China's countervailing duty rate using adverse facts available was based on substantial evidence and in accordance with law.

## CONCLUSION

For these reasons, we respectfully request that this Court deny Yingli China's motion for judgment on the agency record, sustain Commerce's final results, and enter judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

TATE N. WALKER
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C., 20044
Tel: (202) 307-0163
Email: Tate.Walker@usdoj.gov

*Attorneys for Defendant*

OF COUNSEL:
KARL MUELLER
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20230

October 22, 2026

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief complies with the word limitations set forth in the Court's Chambers Procedures. Specifically, excluding those exempted portions as set forth in paragraph 2(B)(1) of the Chambers Procedures, I hereby certify that this brief contains 6,678 words. This word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Tate N. Walker
TATE N. WALKER